IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, ex rel., HERBERT J. VARNER, <br><br> Petitioner, <br><br> vs. <br><br> TIMOTHY BUDZ, facility director, <br><br> Respondent. | Case No. 04 C 2065 |

## MEMORANDUM OPINION AND ORDER[1]

MATTHEW F. KENNELLY, District Judge:

Herbert J. Varner pled guilty to criminal sexual assault of his five-year-old niece and was sentenced to thirteen years in prison. When Varner's prison term was complete, the State of Illinois commenced civil commitment proceedings pursuant to the Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq.*, which permits indefinite commitment of a person found by a jury to be "sexually violent" beyond a reasonable doubt.

The jury in Varner's case heard evidence that Varner had committed sexual acts with children and heard testimony from three clinical psychologists, regarding Varner's mental state and the possibility that he would commit sex offenses against children in the future. The jury was instructed that it had to determine whether the state had proved beyond a reasonable doubt that Varner was a sexually violent person. The jury was further instructed, pursuant to the SVPA, that "sexually violent person" means:

---

[1] The Court thanks petitioner's appointed counsel Richard McLeese for his vigorous advocacy on behalf of petitioner.

1

> [A] person who has been convicted of a sexually violent offense and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

*In re Detention of Varner* (*Varner I*), 198 Ill. 2d 78, 81-82, 759 N.E.2d 560, 562 (2001); *see* 725 ILCS 207/5(f). The jury was also instructed that "mental disorder" is defined as:

> [A] congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence.

*Id.*; *see* 725 ILCS 207/5(b). The jury found that Varner was a sexually violent person, and the court ordered him committed to the custody of the Illinois Department of Human Services for institutional care at a secure facility.

Varner appealed the commitment order, claiming that the SVPA was unconstitutional because it violated substantive due process. The Illinois Supreme Court rejected Varner's due process claim and affirmed his civil commitment. *Varner I*, 198 Ill. 2d at 87, 759 N.E.2d at 565. Varner petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court granted the writ, vacated the Illinois Supreme Court's judgment, and remanded Varner's case for further consideration in light of *Kansas v. Crane*, 534 U.S. 407 (2002).

In *Crane*, the Supreme Court considered the constitutionality of the Kansas Supreme Court's interpretation of the Kansas Sexually Violent Predator Act. The Supreme Court had upheld the constitutionality of the Kansas SVPA several years earlier in *Kansas v. Hendricks*, 521 U.S. 346 (1997). The Kansas SVPA permitted the civil detention of "a person convicted of any of several enumerated sexual offenses, if it is proved beyond a reasonable doubt that he suffers from a 'mental abnormality' - a disorder affecting his 'emotional or volitional capacity which predisposes the person to commit sexually violent offenses' - or a 'personality disorder,'

either of which 'makes the person likely to engage in repeat acts of sexual violence." *Id.* at 351-52. In interpreting the SVPA after the *Hendricks* decision, the Kansas Supreme Court ruled that in order to civilly commit a sexually violent predator, the State had to show that the defendant "cannot control his dangerous behavior." *In re Crane*, 269 Kan. 578, 586, 7 P.3d 285, 290 (2000).

The Supreme Court vacated the Kansas decision, holding that the Kansas court had misread *Hendricks* to require the state to show "a *total* or *complete* lack of control." *Crane*, 534 U.S. at 411 (emphasis in original). The Court held that such an "absolutist approach is unworkable," *id.*, because proof of difficulty in controlling behavior is not demonstrable "with mathematical precision." *Id.* at 412. Instead, the Court stated, the state is required only to provide "proof of serious difficulty in controlling behavior" sufficient to "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* In so ruling, the Court recognized that it was not providing a precise standard for the amount and type of evidence required to show that an offender lacked the ability to control his behavior. Id. at 413. The Court explained that it was purposely avoiding a bright-line rule and ensuring that States retain "considerable leeway" in defining the mental disorder that make an individual eligible for commitment. *Id.*

When the Illinois Supreme Court reconsidered Varner's case and the requirements of the Illinois SVPA in light of *Crane*, it ruled that the statutory requirements were constitutionally sufficient and that a separate jury instruction regarding lack of control was not required. *In re Detention of Varner (Varner II)*, 207 Ill. 2d 425, 433 800 N.E.2d 794, 799 (2003). The court

3

also reasoned that Illinois' statutory definitions of mental disorder and sexually violent person were sufficiently linked with a finding of difficulty in controlling behavior to satisfy *Crane's* holding that the Constitution requires a determination of lack of control as a prerequisite to civil commitment of a sexually dangerous offender. *Id.*

Varner has petitioned for a writ of habeas corpus, alleging that the Illinois Supreme Court's interpretation of *Crane* in *Varner II* violated his substantive due process and equal protection rights. For the reasons stated below, the Court denies his petition.

## Discussion

The Court reviews Varner's habeas corpus petition according to 28 U.S.C. § 2254(d).[2] Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act, permits a federal court to grant a writ of habeas corpus only if the petitioner can show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Both the "contrary to" and the "unreasonable application of" inquiries require a federal court to be "highly deferential" to the state court decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state court decision is contrary to established federal law only if the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

---

[2]Though Varner brings his petition for a writ of habeas corpus under 28 U.S.C. § 2241, the limitations that Congress has imposed on habeas corpus under § 2254 apply. *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001); *Dill v. Holt*, 371 F.3d 1031, 1302-03 (11th Cir. 2004); *see Mederberry v. Crosby*, 351 F.3d 1049, 1059-69 (11th Cir. 2003) (Section 2254 must apply to petitioners in custody pursuant to a State court judgment, or it would "serve no function at all").

4

[that precedent]." *Williams v. Taylor*, 529 U.S. 362, 404 (2000). A state court decision is an unreasonable application of federal law only if it is "objectively unreasonable" and not if it is simply erroneous. *Id.* at 409. With these standards in mind, the Court turns to Varner's due process and equal protections claims.

1.  **Due process**

Varner claims that the Illinois Supreme Court's decision in his case was both contrary to and an unreasonable application of *Crane*.

   A.   "Contrary to"

According to Varner, *Crane* requires a separate lack of control finding in civil commitment hearings for sexually violent persons. Varner argues that the Illinois Supreme Court's decision in *Varner II* was contrary to *Crane* because it held that the statutory requirements of the Illinois SVPA, which does not include a separate lack of control determination, were constitutionally sufficient.

The Court disagrees. Though the Supreme Court ruled in *Crane* that the state must present sufficient evidence of difficulty in controlling behavior to distinguish a sexually violent person from a typical recidivist, *Crane*, 534 U.S. at 412, it did not conclude that such a finding had to be made separately from the findings of dangerousness and mental illness. Indeed, the Court explicitly rejected the establishment of a bright-line test for inability to control behavior. *Id.* at 413.

For this reason, the Illinois Supreme Court's decision was not contrary to *Crane*. The Illinois Supreme Court's reading of *Crane* is consistent with that of the majority of state courts that have considered *Crane's* effect on the requirements of their states' civil commitment acts.

5

*See In re Commitment of Laxton*, 254 Wis. 2d 185, 201-02, 647 N.W.2d 784, 793 (2002) (separate finding regarding the individual's serious difficulty in controlling behavior is not necessary for civil commitment)[3]; *Florida v. White*, 891 So.2d 502, 509 (Fl. 2004) ("*Crane* does not impose [an element] required for civil commitment or render the Florida standard jury instructions inadequate"); *People v. Williams*, 31 Cal. 4th 757, 774-75, 74 P.3d 779, 790 (2003) (*Crane* "does not compel us to hold that further lack-of-control instructions or findings are necessary to support a commitment under the SVPA"); *In re Commitment of Almaguer*, 117 S.W.3d 500, 504 (Tex. App. 2003) (the *Crane* majority made no mention of the need for a new instruction or even additional jury findings); *In re Leon G.*, 204 Ariz. 15, 22 59 P.3d 779, 786 (2002) ("*Crane's* statement that a state must prove 'serious difficulty in controlling behavior' does not require express statutory language"). *But see In re Thomas*, 74 S.W.3d 789, 792 (Mo. 2002) (jury instruction defining mental disorder must include the language "causes the individual to have serious difficult in controlling his behavior" to comport with *Crane*); *In re Detention of Barnes*, 658 N.W.2d 98, 101 (Iowa 2003) (*Crane* requires a jury instruction specifying serious difficulty in controlling behavior); *In re Commitment of W.Z.*, 173 N.J. 109, 133-34, 801 A.2d 205, 219 (2002) (the state must specifically prove "by clear and convincing evidence that the individual has serious difficulty his or her harmful sexual behavior"); *see also* Peter Pfaffenroth,

---

[3] After *Crane*, the Wisconsin jury instruction for the definition of mental disorder was revised to add language linking the definition of mental disorder with the person's difficulty in controlling behavior. *Laxton*, 254 Wis. 2d at 204 n.14, 647 N.W.2d at 794. Mental disorder in Wisconsin is now defined as "a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior. Not all persons with a mental disorder ... have serious difficulty in controlling behavior." *Id.*; *see* Wis. JI – Criminal 2502 (Special Release 2/2002). This standard jury instruction, however, was not adopted until after Laxton was civilly committed.

*The Need for Coherence: States' Civil Commitment of Sex Offenders in the Wake of Kansas v. Crane*, 55 Stan. L. Rev. 2229, 2248 (2003) (arguing that *Crane* demands a separate lack of control finding); Kenneth W. Gaines, *Instruct the Jury: Crane's "Serious Difficulty" Requirement and Due Process*, 56 S.C. L. Rev. 291, 300-01 (2004) (same).

The Ninth Circuit came to the same conclusion when faced with a post-*Crane* due process challenge to Washington's SVPA. *Brock v. Seling*, 390 F.3d 1088, 1091 (9th Cir. 2004). In *Brock*, the court ruled that the jury's finding that the offender had "some combination of mental abnormality and personality disorder which in conjunction make him likely to engage in predatory acts of violence" necessarily included a finding that the offender had serious difficulty in controlling his behavior and thus met the requirements of *Crane*. *Id.* at 1090-91. The court concluded that "the United States Supreme Court does not require a fact finder to make specific determinations of 'lack of control' or 'volitional impairment' before ordering civil commitment of a sexually violent predator." *Id.*

Varner argues that the Supreme Court in *Crane* must have intended that a separate determination of lack of control be made, because it concluded that the statutory requirements of the Kansas SVPA, which did not include specific lack of control language, were constitutionally infirm. Varner's argument fails, however, because *Crane* did not find the Kansas SVPA constitutionally deficient. Though the Court remanded the case for further consideration in light of its decision, it did not overturn *Hendricks* and did not direct that on remand, a jury had to determine anew whether, in addition to the statutory criteria, Crane had serious difficulty controlling his behavior. *Crane*, 534 U.S. at 872.

7

B. "Unreasonable application"

The decision in *Varner II* was not an unreasonable application of *Crane* for essentially the same reasons that it was not contrary to the holding of *Crane*. The Illinois SVPA, like the Kansas SVPA, defines "mental disorder" and "sexually violent person" in a way that encompasses a finding of inability to control behavior. In Varner's case, the jury was instructed that mental disorder was defined as "a congenital or acquired condition affecting the emotional or *volitional* capacity that *predisposes a person to engage in* acts of sexual violence," and that the mental disorder must "make[ ] it *substantially probable* that the person will engage in acts of sexual violence." *Varner II*, 207 Ill. 2d at 427, 800 N.E.2d at 796 (emphasis added). The Illinois Supreme Court did not unreasonably apply *Crane* when it held that by finding Varner to have a mental disorder that makes it substantially probable that he will commit acts of sexual violence in the future, the jury necessarily found that he had "serious difficulty" controlling his behavior as required by *Crane*. *See also Brock*, 390 F.3d at 1090-91 ("While the jury did not specify the severity of Brock's condition, it is clear it did not commit him absent 'any' showing of [lack of] control in contravention of *Crane*."). In other words, a determination that Varner had serious difficulty in controlling his behavior was implicit in the jury's finding of future dangerousness based on mental illness.

As noted earlier, decisions from three state supreme courts support Varner's interpretation of *Crane*. *See supra* at 6. The standard of review in habeas corpus cases, however, is whether the state court's application of the federal law was objectively unreasonable. *Williams*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."); *see also Anderson v. Cowan*, 227 F.3d 893, 896-97 (7th

8

Cir. 2000) (under the "unreasonable application of" clause, the court should "defer to a reasonable, if incorrect, state court decision"). In light of the language and holding of *Crane*, it was not objectively unreasonable for the Illinois Supreme Court to uphold Varner's commitment and conclude that a separate determination of lack of control was not mandated by *Crane*.

## Equal protection

Varner argues that he has been denied equal protection of the law because the Illinois Supreme Court has imposed a more stringent standard for commitment under the Sexually Dangerous Persons Commitment Act than under the Sexually Violent Persons Commitment Act. The SDPA provides for civil commitment of persons deemed to be "sexually dangerous," which is defined by statute as:

> All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children.

725 ILCS 205/1.01. Unlike the SVPA, the SDPA permits civil commitment of persons who have never been charged with or convicted of a criminal offense.

Varner's equal protection claim is based on *People v. Masterson*, 207 Ill.2d 305, 798 N.E.2d 735 (2003), a decision of the Illinois Supreme Court holding that the requirements for commitment under the SDPA were constitutionally infirm in light of *Crane*. In Masterson, the court held that the language of the SDPA did not comply with *Crane* because it did not contain a definition of the term "'mental disorder' that specifically linked the disorder to impairment of 'volitional capacity' nor a specific standard for determining the likelihood that a sexual offense will be committed in the future." *Id.* at 328. The court went on to note that the Illinois SVPA,

like similar statutes in other states, "*does* contain an articulated volitional component in its definition of 'mental disorder' and required finding that it is 'substantially probable' the subject of the proceeding will engage in proscribed sexual conduct in the future." *Id.* (emphasis in original). Citing rules of statutory construction, the court held that because the SDPA and SVPA are "obviously closely related" and are "undoubtedly governed by on spirit," *id.*, the definition of mental disorder from the SVPA should be read into the SDPA "to the extent consistency allows and augmented with the standard that appears to emerge from *Crane*." *Id.* at 329. The court went to hold that the term "mental disorder" in the SDPA would be construed as:

> [A] congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in the commission of sex offenses *and result in serious difficulty controlling behavior.*

*Id.* (emphasis added).

Varner's equal protection claim arises out of the Illinois Supreme Court's inclusion of the phrase "and results in serious difficulty controlling behavior" in its requirement for commitment under the SDPA. In *Varner II*, when faced with Varner's *Crane* challenge, the Illinois Supreme Court did not add this language to the definition of mental disorder in the SVPA. Varner claims that the court's failure to impose a requirement of a separate lack of control finding in his case results in the SVPA providing less protection to the accused than the SDPA, thereby violating the equal protection rights of persons subject to the SVPA.

The equal protection clause requires a state to treat similarly situated persons in a similar way. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To establish an equal protection violation, Varner must first show that persons committed under the SVPA are similarly situated to those committed under the SDPA. Varner argues that the Illinois Supreme

Court essentially determined in *Masterson* that the two groups were similarly situated when it stated that the SDPA and SVPA are "obviously closely related in subject and proximity, and they are undoubtedly governed by one spirit and a single policy." *Masterson*, 207 Ill. 2d at 329, 798 N.E.2d at 48.

Illinois courts have consistently held, however, that persons committed under the SVPA and the SDPA are not similarly situated. *See, e.g., In re Commitment of Bushong*, 351 Ill. App. 3d 807, 815-16, 815 N.E.2d 103, 111 (2004) (requiring the State to prove its case for continued commitment by clear and convincing evidence under the SVPA, when the SDPA requires proof beyond a reasonable doubt, does not violate equal protection because persons committed under the SVPA and SDPA are not similarly situated); *People v. Hancock*, 329 Ill. App. 3d 367, 379, 771 N.E.2d 459, 468 (2002) (no equal protection violation in the difference in commitment procedures between the SDPA and SVPA because persons committed under the SDPA and SVPA are not similarly situated); *People v. McVeay*, 302 Ill. App. 3d 960, 968, 740 N.E.2d 539, 545 (1999) (sexually violent persons create different societal problems from those created by sexually dangerous persons, justifying the legislature in "prescribing different definitions, procedures, and methods of treatment" under the SVPA and SDPA).

The Court agrees with the reasoning of these cases. The Illinois legislature has seen fit to classify sexually violent persons and sexually dangerous persons with distinct criteria. Although, as the Illinois Supreme Court indicated in *Masterson*, the two statutes are closely related and are informed by a common policy, that does not make persons charged under the two statutes similarly situated. In adopting two separate statutory schemes, the legislature saw a need to create different commitment procedures for those convicted of sexually violent offenses than for

those who have no prior convictions.

Even were the Court to determine that persons committed under the SDPA and SVPA are similarly situated for purposes of equal protection review, the more limited definition of "mental disorder" in the SDPA still would not violate the equal protection rights of SVPA offenders. In considering Varner's equal protection challenge to the SVPA, the Court employs the rational basis standard of review. *In re Detention of Samuelson*, 189 Ill. 2d 548, 561-62, 727 N.E.2d 228, 236 (2000); *In re Commitment of Bushong*, 351 Ill. App. 3d 807, 815, 815 N.E.2d 103, 110 (2004). The rational basis standard "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966). If the difference in the definition of mental disorder in the SDPA and SVPA bears a rational relationship to a legitimate state interest, than there is no equal protection violation. *Bushong*, 351 Ill. App. 3d at 815, 815 N.E.2d at 110.

Illinois has a legitimate in interest in making the standard for commitment more stringent under the SDPA than SVPA, because the former statute concerns persons who have not been adjudicated guilty of a criminal sexual offense. The Supreme Court rationally could have determined that the risk to society posed by persons whose violent proclivities have resulted in a criminal conviction is greater than that posed by sexually dangerous persons, justifying a less specific standard for commitment. *See Bushong*, 351 Ill. App. 3d at 816, 815 N.E.2d at 111 (requiring proof of continued dangerousness beyond a reasonable doubt under the SDPA, while the clear and convincing standard governs in SVPA cases, does not violate equal protection rights of SVPA committees because they have already been convicted of a sexually violent

crime).

## Conclusion

For the reasons explained above, the Court denies Varner's petition for a writ of habeas corpus [docket no. 27] and directs the Clerk to enter judgment in favor of the respondent.

_____
MATTHEW F. KENNELLY
United States District Court

Date: March 21, 2005